**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 14-cv-3324-WJM-KMT

ISMAEL MENDOZA,

Plaintiff,

v.

ANDREW L. CISNEROS,
AM BUILDERS & CONTRACTORS SUPPLY CO INC.,
FOWLER & PETH INC.,
CITY OF GREELEY,
STATE OF COLORADO, and
UNITED STATES OF AMERICA,

Defendants.

---

**ORDER GRANTING IN PART MOTION FOR SUMMARY JUDGMENT**

---

On December 8, 2014, Defendant United States of America ("the Government") removed the instant action from the District Court for Weld County, Colorado. (ECF No. 1.) Plaintiff Ismael Mendoza ("Plaintiff") sues to quiet title to a piece of property located in Colorado, as described further below. (ECF No. 3.) Before the Court is the Government's Motion for Summary Judgment against Plaintiff ("Motion"). (ECF No. 53.) For the reasons set forth below, the Motion is granted in part.

## I. BACKGROUND

The following facts are undisputed unless otherwise noted. This matter involves a dispute regarding Lots 32 and 33, 1524 Third Avenue, Greeley, CO 80631 ("the Property"). (ECF No. 53 at 3.) Defendant Andrew Cisneros acquired the Property in November 2003. (*Id.*) The Internal Revenue Service ("IRS") assessed federal income

taxes against Mr. Cisneros in November 2004, April 2006, and April 2009 for amounts incurred in tax years 2000 through 2008. (*Id*. at 3-4.) Mr. Cisneros was the owner of the Property when the tax assessments were made. (*Id*. at 5.) Despite notice and demand, Mr. Cisneros did not pay his federal tax liabilities for tax years 2000, 2003, and 2005 through 2008. (*Id*.) The IRS thus recorded three Notices of Federal Tax Lien ("the Liens") with the Clerk and Recorder of Weld County, Colorado, naming Mr. Cisneros as the taxpayer on January 23, 2006, June 22, 2006, and April 4, 2011, which the Government claims attached to the Property. (*Id*.)

Mr. Cisneros became delinquent on his county property taxes on the Property for tax year 2009. (*Id*. at 5.) On November 1, 2010, the County Treasurer for Weld County sold a tax lien on the Property to "Dab Tlc1, Berger, David A" ("Berger") to satisfy Mr. Cisneros's delinquent property taxes. (*Id*. at 5-6.) The Weld County Treasurer issued a Certificate of Purchase to Berger. (*Id*. at 6.) On September 5, 2013, Berger assigned the Certificate of Purchase to Plaintiff, who then applied for the issuance of a Treasurer's Deed. (*Id*.) On October 7, 2013, the Weld County Treasurer notified the IRS, by certified mail, of the tax lien sale and Plaintiff's application for a Treasurer's Deed. (*Id*.) The notice was sent to the IRS's Fort Collins, Colorado office; no other notice of sale was sent to the IRS. (*Id*.) Plaintiff was issued a Treasurer's Deed to the Property on February 10, 2014, and recorded it the following day. (*Id*.)

Plaintiff subsequently brought this action seeking a judicial declaration that the Defendants have "no interest, estate or claim of any kind" in the Property. (ECF No. 3 at 2.) The Government filed an Answer and Counterclaim against Plaintiff, seeking a

determination that the Liens on the Property were not extinguished by the issuance of the Treasurer's Deed to Plaintiff, and that the Government is entitled to foreclose on the Liens and sell the Property. (ECF No. 24 at 10-14.) The Government filed the instant Motion for summary judgment on May 6, 2015.

## II. LEGAL STANDARD

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994). Whether there is a genuine dispute regarding a material fact depends upon whether the evidence presents a sufficient disagreement as to require submission to a jury or, conversely, is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49 (1986); *Carey v. U.S. Postal Serv.*, 812 F.2d 621, 623 (10th Cir. 1987).

A fact is "material" if it pertains to an element of a claim or defense, and a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable juror could return a verdict for either party. *Anderson*, 477 U.S. at 248. The Court must examine the facts in the light most favorable to the nonmoving party, and resolve factual ambiguities against the moving party. *Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987). The summary judgment standard thus favors a right to trial. *See id.*

## III. ANALYSIS

The Government makes the following arguments, which the Court addresses in

turn: (1) the Government's counterclaim is not barred by the applicable statute of limitations; (2) the Property is subject to the Liens; (3) under 26 U.S.C. § 7425, the sale of the Property to Plaintiff via the Treasurer's deed did not divest the Liens; and (4) the Government is entitled to foreclose on the Liens under 26 U.S.C. § 7403 and to receive first priority in the distribution of any sale proceeds. (ECF No. 53 at 7-15.)

**A. Whether the Statute of Limitations Expired**

While not argued by Plaintiff, the Government maintains that its counterclaim is not barred by the applicable statute of limitations. (ECF No. 53 at 7); *Youren v. Tintic Sch. Dist.*, 343 F.3d 1296, 1304 (10th Cir. 2003) ("[T]he statute of limitations defense is an affirmative defense and is subject to waiver."). A suit to collect federal tax liens must generally be brought "within 10 years after the assessment of the tax." 26 U.S.C. § 6502(a)(1). However, if a taxpayer files for bankruptcy, the statute of limitations on collection is tolled while the automatic stay prevents the IRS from collecting the taxes, and for six months thereafter. 26 U.S.C. § 6503(h). The automatic stay prohibits the collection of federal taxes that arose before the commencement of the bankruptcy case, and generally continues until the termination of the case. 11 U.S.C. § 362(a), (c).

Here, the IRS assessed federal taxes against Mr. Cisneros as follows:

| **Tax Year** | **Assessment Date** |
|---|---|
| 2000 | November 29, 2004 |
| 2003 | November 22, 2004 |
| 2005 | April 3, 2006 |
| 2006 | April 6, 2009 |
| 2007 | April 6, 2009 |
| 2008 | April 20, 2009 |

(ECF No. 53 at 3-4.) The Government filed its counterclaim seeking to foreclose on the

Liens on January 6, 2015. (ECF No. 24 at 12-13.) Thus, Mr. Cisneros's tax liabilities for 2005 through 2008 are collectible and not barred by the statute of limitations because they were assessed less than ten years before the Government filed its counterclaim.

However, the assessments for years 2000 and 2003 were made ten years before the Government's counterclaim was filed. Accordingly, the Court must determine whether these tax assessments are collectible due to tolling of the limitations period. Mr. Cisneros filed a bankruptcy petition on January 6, 2009, and his bankruptcy case was closed without discharge on October 12, 2010. (ECF No. 53 at 5.) The statute of limitations was therefore tolled for over two years, ending on April 12, 2011, six months after Mr. Cisneros's bankruptcy case was closed. 26 U.S.C. § 6503(h). The Government's action to collect the taxes from 2000 and 2003 is therefore timely given the amount of time that the statute of limitations was tolled.

**B. Whether the Liens Attached to the Property**

The Government argues that the Liens attached to the Property as a matter of law. 26 U.S.C. § 6321 provides:

> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

Liens imposed by § 6321 arise at the time the tax assessment is made and continue until liability for the amount assessed, or a judgment against the taxpayer arising out of

such liability, is satisfied or becomes unenforceable due to a lapse of time. 26 U.S.C. § 6322. Plaintiff does not dispute the Government's contention that "[d]espite notice and demand, Cisneros neglected or refused to pay his federal tax liabilities for tax years 2000, 2003, and 2005-2008." (*Compare* ECF No. 53 at 5, *with* ECF No. 58 at 2.) It is further undisputed that Mr. Cisneros owned the Property at the time the tax assessments were made. (*Id.*) The Court thus finds that the Liens attached to the Property at the time of the assessments pursuant to §§ 6321 and 6322.

**C. Whether the Liens Remain on the Property**

Once properly attached, the Liens remain on the Property so long as they have not been satisfied or become unenforceable due to a lapse of time. 26 U.S.C. § 6322. A non-judicial sale of property occurs "subject to and without disturbing" a lien if the lien was filed more than 30 days before the sale, and the IRS was not given notice "in accordance with regulations prescribed by the Secretary[] in writing, by registered or certified mail . . . not less than 25 days prior to such sale." 26 U.S.C. § 7425(b), (c). The Court must therefore determine whether the Liens were properly filed more than 30 days before the Property's sale, and whether the IRS was properly notified at least 25 days in advance.

1. <u>The Timeliness of the Liens</u>

For the Liens to remain attached to the Property, tax lien notices must have been filed more than 30 days before the date of sale, and in accordance with 26 U.S.C. § 6323 (f) or (g). 26 C.F.R. § 301.7425-2(a). Tax liens are not valid as against any purchaser of the property until such notice has been filed. 26 U.S.C. § 6323(a). In the case of real property, a tax lien notice must be filed "in one office within the State or the

county . . . as designated by the laws of such State, in which the property subject to the lien is situated." *Id*. at § 6323(f)(1)(A)(i).

In Colorado, all "instruments in writing conveying, encumbering, or affecting the title to real property . . . may be recorded in the office of the county clerk and recorder of the county where such real property is situated." Colo. Rev. Stat. § 38-35-109(1); *see also Joondeph v. Hicks*, 235 P.3d 303, 306 (Colo. 2010) ("Recording a lien in accordance with statutory requirements [under § 38-35-109(1)] creates constructive notice, which under normal circumstances will leave subsequent liens in a priority position junior to a prior recorded lien."). Lien notices must be filed on a "Form 668, 'Notice of Federal Tax Lien Under Internal Revenue Laws,'" which are valid notwithstanding any contrary law. 26 C.F.R. § 301.6323(f)-1(d)(1); *In re LMS Holding Co.*, 50 F.3d 1526, 1528 (10th Cir. 1995) (tax regulations have the force and effect of law.) "Form 668" is defined as either a paper form or one transmitted electronically that "identif[ies] the taxpayer, the tax liability giving rise to the lien, and the date the assessment arose." 26 C.F.R. § 301.6323(f)-1(d)(2).

The IRS here filed its three lien notices with the Clerk and Recorder of Weld County on January 23, 2006, June 22, 2006, and April 4, 2011. (ECF No. 53 at 5.) Each of the notices is filed on a Form 668 that identifies Mr. Cisneros as the taxpayer, the amount of the tax liability, and the date of assessment, and was filed with the Clerk and Recorder for Weld County where the Property is located. (ECF No. 53-1 at 53-63.) The Court therefore finds that the notices are facially valid, and were filed with the appropriate state office.

However, the Court must further determine the date of sale, which dictates whether the lien notices were timely filed. As will be explained below, if the date of sale is November 1, 2010—the date Berger purchased the county property tax lien on the Property—the April 4, 2011 notice filed for tax years 2006 through 2008 was untimely. (*See* ECF No. 53 at 5.) On the other hand, if the date of sale is February 10, 2014—the date Plaintiff acquired the Treasurer's deed to the Property—the April 4, 2011 lien notice was timely. (*Id*.)

The "date of sale" in the case of a nonjudicial sale under 26 U.S.C. § 7425(b) varies depending on the context. The governing regulations define a "nonjudicial sale" as including "the divestment of the taxpayer's interest in property which occurs by operation of law, [or] by public or private sale." 26 C.F.R. § 301.7425-2(a). Where, as here, the divestment of junior liens on property does not directly result from a public or private sale, the "date of sale" is the date on which the junior liens are divested under local law. *Id*. § 301.7425-2(b)(3).

In this case, Berger received a certificate of purchase on the Property following a tax lien sale under Colorado law. (ECF No. 53 at 6.) The certificate of purchase, however, did not divest junior lienholders. If a tax lien is sold on a property, Colorado law gives any person with a legal or equitable claim to the property to redeem it from the sale of the tax lien. Colo. Rev. Stat. § 39-12-103(1). If redemption does not occur within three years from the date of the tax lien sale, the holder of the certificate of purchase is entitled to apply for a Treasurer's deed. *Id*. § 39-11-120(1); *see Columbus Investments v. Lewis*, 48 P.3d 1222, 1224 n.2 (Colo. 2002). The right to redeem continues until the Treasurer's deed is executed. Colo. Rev. Stat. § 39-12-103(3).

Execution of the Treasurer's deed vests "in the purchaser all the right, title, interest, and estate of the former owner in and to the land conveyed and also all right, title, interest, and claim of the state and county thereto." *Id*. § 39-11-136(1). Execution of the Treasurer's deed is therefore the final step in acquiring clear title to the subject property.

The Court accordingly finds that "date of sale" is the date the Treasurer's deed was executed because it, and not Berger's receipt of the certificate of purchase following the tax lien sale, divested any junior lien holders. *See* 26 U.S.C. § 7425(b); 26 C.F.R. § 301.7425-2(b)(3). Plaintiff was issued the Treasurer's deed to the Property on February 10, 2014, and the lien notices were filed on January 23, 2006, June 22, 2006, and April 4, 2011. (ECF No. 53 at 5-6.) Moreover, the lien notices filed for tax years 2000 and 2003 were properly refiled before 10 years and 30 days passed following the date of the tax assessment, thus ensuring that the notice related back to its original filing date. 26 U.S.C. § 6323(g)(1), (3); 26 C.F.R. § 301.6323(g)-1(a)(2); (ECF No. 53-1 at 63.) The lien notices were therefore timely filed for purposes of 26 U.S.C. § 7425(b).

2. <u>Proper Notice to the IRS</u>

To extinguish the Liens, Plaintiff must have given the IRS notice of sale by certified mail and in the form prescribed by the governing regulations no less than 25 days prior to sale. 26 U.S.C. § 7425(c). The regulations require that notice be sent to the IRS "official, office and address specified in IRS Publication 786 . . . or any successor publication." 26 C.F.R. § 301.7425-3(a). A notice of sale given to an office other than that listed in the relevant publication is ineffective to remove a federal lien. *Id*. IRS Publication 786 states that notices should be sent to the regional Collection

Advisory Group Manager. (ECF No. 52-1 at 2.) IRS Publication 4235 (referenced in Publication 786) contains the actual address and contact information for each Collection Advisory office. (*Id.*) The IRS publication in effect in 2013 required that notices of sale for property in Colorado be sent to "1999 Broadway, MS 5021DEN, Denver, CO 80202-2490." (*Id.* at 5.)

Plaintiff does not dispute that the County Treasurer of Weld County sent only one notice of sale to the IRS address at "301 S. Howes St., Room 302, Fort Collins, CO 80521." (ECF No. 53 at 6.) According to Plaintiff, Linda Markley, the Weld County Treasurer's Office representative charged with conducting tax lien sales and issuing Treasurer's deeds, was instructed by an IRS representative to send the sale notice to the IRS's Fort Collins office. (ECF No. 58 at 4.) Ms. Markley sent the notice as instructed, and on October 18, 2013, the Fort Collins office acknowledged receipt of the notice of sale. (*Id.* at 3.) Plaintiff accordingly argues that because the IRS had actual notice of the sale, it is immaterial whether the sale notice was sent to the address listed in the relevant IRS publication. (*Id.* at 6.)

However, the governing regulations, as interpreted in this Circuit, are not so forgiving. The regulations explicitly state that "a notice of sale is *not effective* if it is given to an office other than the office listed in the relevant publication." 26 C.F.R. § 301.7425-3(a) (emphasis added). The Court "recognize[s] the harshness of this rule. This rule allows the IRS to receive actual notice, as it did in the instant case, ignore the notice and still retain the right to levy upon the property. The remedy, if any there is to be, must come from Congress and not from the Courts." *Colo. Prop. Acquisitions, Inc.*

*v. United States*, 894 F.2d 1173, 1175 (10th Cir. 1990). The regulation also makes a distinction between a notice properly given but lacking the required information, and one improperly delivered. *See id.* Where a notice is facially deficient, but otherwise properly delivered, the regulation requires the IRS to identify the deficiency and notify the sender in writing. 26 C.F.R. § 301.7425-3(d)(2). No such provision applies to an improperly delivered notice, which is not considered "inadequate" under the regulation. Rather, "[w]hen the method of delivery of the foreclosure notice fails to meet the statutory requirements then the IRS has been given *no notice*." *Colo. Prop.*, 894 F.2d at 1175 (emphasis added). The IRS was thus not required to notify Plaintiff or the Weld County Treasurer that the notice was ineffective, and the IRS's actual notice of the sale did not divest the Liens.

The Court is not persuaded that the state law cited by Plaintiff has any application here. Plaintiff argues that the Treasurer was only required under Colorado law to conduct a diligent inquiry to learn the addresses of those having interest in the property. (ECF No. 58 at 5.) The Tenth Circuit has held that Congress intended to "occupy the field" in resolving federal tax lien issues, meaning 26 U.S.C. § 7425, not Colorado law, dictates the method for discharging a federal lien. *Russell v. United States*, 551 F.3d 1174, 1180 (10th Cir. 2008) ("Moreover, it is evident Colorado law is naturally preempted where notice is not given to the government as a lien holder."). Thus, the Treasurer's obligation under Colorado law to undertake a diligent inquiry to locate all potential interest holders does not supersede its obligation to properly notify the IRS pursuant to the governing federal regulations.

Therefore, because the IRS was not properly notified of the Property's sale under 26 U.S.C. § 7425(c), the sale to Plaintiff took place subject to and without disturbing the Liens on the Property.[1] The harshness of this result to Plaintiff is an example, in the Court's view, of overreaching conduct on the part of the IRS which rightly causes cynicism and contempt by the people against their government. In any other regulatory context the Court would have ruled that the IRS had actual notice of the notice of sale, and its ruling on this issue would have been in Plaintiff's favor. However, the regulations apparently embrace this unjust result, allowing the IRS to disregard a notice of sale sent in good faith and as to which it most obviously had actual notice, so it can lie in wait to seize on a technicality in the convoluted tax laws later on. Because it is powerless to do otherwise given Tenth Circuit precedent, such is the law that the Court must reluctantly apply here, notwithstanding the injustice such a law imposes upon the Plaintiff.

**D. Whether the Government is Entitled to Foreclose on the Liens**

The Court must now determine whether the Government is entitled to foreclose on the Liens and, if so, to what priority the Liens are entitled. Where a party has neglected to pay any tax liability, the Government is entitled to file a civil action at the request of the Attorney General to enforce its liens on "any property, of whatever

---

[1] The Court also notes that while Plaintiff does not explicitly make an estoppel argument, any such argument would fail. To "successfully assert estoppel for unauthorized acts of government agents, the asserting party must show affirmative misconduct on the part of the government." *F.D.I.C. v. Hulsey*, 22 F.3d 1472, 1489 (10th Cir. 1994). Affirmative misconduct is a high hurdle to overcome, and "the erroneous advice of a government agent does not reach the level of affirmative misconduct." *Id*. Here, Plaintiff alleges just that: erroneous advice from an IRS agent rather than any affirmative misconduct. Estoppel is therefore inappropriate under these circumstances.

nature, of the delinquent, or in which he has any right, title, or interest." 26 U.S.C. § 7403(a). The statute requires the Court to render a final determination as to "the merits of all claims to and liens upon the property" at issue. *Id*. at § 7403(c). When, as here, the United States establishes an interest in the property, the Court may decree a sale of the property and a distribution of the sale proceeds. *Id*.

The Government states that its Counterclaim was filed "at the direction of the Attorney General of the United States and at the request and with the authorization of the Chief Counsel of the [IRS], a delegate of the Secretary of the Treasury, pursuant to 26 U.S.C. §§ 7401 and 7403." (ECF No. 24 at 6.) As discussed above, the Liens were validly assessed and attached to, and remain on, the Property because proper notice of sale was not provided to the IRS. Moreover, the Liens have not been satisfied or become unenforceable due to lapse of time. 26 U.S.C. § 6322. Plaintiff does not dispute the value of Mr. Cisneros's tax liabilities, or whether the taxes were validly assessed. No genuine issue of material fact thus exists with regard to the validity or amount of the Liens.

However, whether to order a sale of the Property is subject to the Court's discretion. *United States v. Simons*, 419 F. App'x 852, 856 (10th Cir. 2011). The Government states that it is entitled to a judgment foreclosing the Liens along with an order of sale, and the parties recently submitted supplemental briefing on this issue. (ECF Nos. 66, 67). Plaintiff's supplemental brief largely reiterates the arguments contained in his response to the instant Motion. (ECF No. 66.) Plaintiff argues that Weld County will be prejudiced if it is not joined as a party to this action and a sale is authorized. (*Id*. at 3.) However, as discussed below, the Treasurer's deed

extinguished all prior interests in the Property other than the Liens, including the interests of Weld County. *See* Colo. Rev. Stat. § 39-11-136(1). Weld County will thus not be prejudiced if the Property is sold because its claim to the Property has either been satisfied or extinguished.

Beyond the arguments as to Weld County, Plaintiff has not identified any considerations that militate in favor of preventing a sale other than his own interests in the Property, which the Court finds insufficient. *Cf. United States v. Rodgers*, 461 U.S. 677, 709-11 (1983). Plaintiff was on notice of the Liens because they were properly recorded prior to his acquisition of the Property, and Plaintiff testified at his deposition that he was aware that buying property through a tax sale was risky. (ECF No. 67-1 at 9.) Plaintiff further testified that, at the time of his deposition, neither he, nor anyone else, was living in the Property; Plaintiff did not indicate in his supplemental brief that anyone currently lives in the Property. (*Id*. at 10, ECF No. 66.) Moreover, Courts are charged with "limited equitable discretion" in this circumstance that should be used "rigorously and sparingly, keeping in mind the Government's paramount interest in prompt and certain collection of delinquent taxes." *Rodgers*, 461 U.S. at 711. The Court further agrees with the Government for the reasons set forth in its supplemental brief (ECF No. 67) that the *Rodgers* factors are largely inapposite here, and, regardless, Plaintiff makes no argument that the factors apply in his favor to prevent the sale. *See Rodgers*, 461 U.S. at 710-11.

Were the Court tasked solely with determining Plaintiff's interest in the Property, it would find that the Government is authorized to foreclose on the Liens and sell the

Property. However, the Government's Motion for Default Judgment against three parties is still outstanding. (ECF No. 52.) The Court accordingly declines to render a final decision on whether to order a sale until it determines whether the Government is entitled to judgment against the defaulting parties.[2] The Court therefore reserves ruling on this portion of the Government's Motion, and addresses it in conjunction with the Court's ruling on the Motion for Default Judgment.

The Government next argues that the Liens are entitled to first priority. Colorado utilizes a race-notice recording statute. Colo. Rev. Stat. § 38-35-109(1). The race-notice system protects buyers who record their liens without notice of prior unrecorded liens or conveyances. *Joondeph*, 235 P.3d at 306. "Recording a lien in accordance with statutory requirements creates constructive notice, which under normal circumstances will leave subsequent liens in a priority position junior to a prior recorded lien." *Id*. The Court has already concluded that the Government properly filed the lien notices before Plaintiff acquired the Property, and that the Liens were not divested by the Treasurer's deed. Thus, the Liens now have first priority because all other prior interests in the Property were extinguished when the Treasurer's deed was executed. Colo. Rev. Stat. § 39-11-136(1); *see also Moorehead v. John Deere Indus. Equip. Co.*, 194 Colo. 398, 401 (1977) ("It is an established principle of real property law in Colorado that a treasurer's deed issued pursuant to a valid tax sale extinguishes all prior liens, encumbrances, and other charges against the real property and conveys a new and paramount title to the grantee.").

---

[2] Defendant City of Greeley and Defendant Fowler & Peth, Inc. have both disclaimed any interest in the Property. (ECF No. 1-1 at 9-12.)

Plaintiff, however, argues that the Government cannot foreclose on the Liens without invalidating his Treasurer's deed. (ECF No. 58 at 7-11.) According to Plaintiff, if the Treasurer's deed is invalidated, then the property taxes assessed by Weld County must remain on the Property because the Treasurer's deed did nothing to extinguish them. (*Id.*) Plaintiff therefore accuses the Government of seeking to void the Treasurer's deed, while ignoring the county tax liens created by the unpaid property taxes, in order to give the Liens first priority. (*Id.*) Plaintiff claims that this would allow the Government to foreclose on the Liens free and clear of any obligation to pay Weld County or Plaintiff the value of the property taxes that were a prior lien on the Property. (*Id.*); *Moorehead*, 194 Colo. at 400 ("In Colorado, . . . real property tax liens[] are perpetual liens and have priority over all other liens.") (citing Colo. Rev. Stat. § 39-1-107(2)).

The issue, however, is not so complicated. 26 U.S.C. § 7425 preserves federal tax liens. The statute and accompanying regulations contain specific rules that dictate how a federal lien may be preserved, and how it may be extinguished. Here, the Liens remain on the Property, and were not extinguished due to Plaintiff's noncompliance with the federal notice requirements. The Government does not seek to invalidate the Treasurer's deed issued to Plaintiff and makes no argument that the deed is invalid. The Treasurer's deed is thus presumably valid and extinguished all prior interests (including that of Weld County) except for the Liens which remain on the Property under federal law.

Plaintiff's reliance on *United States v. Colorado*, 872 F.2d 338 (10th Cir. 1989) and *Colorado Property Acquisitions, Inc. v. United States*, 894 F.2d 1173 (10th Cir.

1990) is unavailing. Both cases involved a situation in which the Government held a lien junior to that of another party, where the senior lienholder ultimately purchased the subject property at sale. For example, in *United States v. Colorado*, the State (the senior lienholder) publicly auctioned the property to satisfy its liens, but did not give the Government prior notice of the sale. 872 F.2d at 339. The State purchased the property at the auction. *Id*. The Government sued, arguing that its junior lien survived the property's sale, and that the State's purchase of the property extinguished its senior lien through the merger doctrine. *Id*.

The issue in *United States v. Colorado* was whether the State's purchase of the property, done without notice to the Government, eliminated the State's senior lien by merging that lien with fee title to the property, thus elevating the federal tax lien to first priority. *Id*. The court held that merger occurs absent a contrary intent to preserve the lien. *Id*. at 340. However, the court held that such a contrary intent was present, as the State intended to preserve its lien on the property. *Id*. Thus, the State's lien was not extinguished by its purchase of the property, and retained priority over the Government's federal lien. *Id.* at 342. The court further held that the State's mere failure to comply with the notice provisions of 26 U.S.C. § 7425 did not automatically elevate the Government's junior tax liens to priority status. *Id*. at 341. The *Colorado Property* court reaffirmed these principles. 894 F.2d at 1173.

The instant case is distinguishable. Plaintiff cannot subrogate himself to the priority of the county tax liens he purchased because those liens were extinguished by the Treasurer's deed. Acquiring title to property via a Treasurer's deed has a different

legal effect than the public auction that occurred in *United States v. Colorado*. Colorado law provides that the issuance of a Treasurer's deed vests in the purchaser "all right, title, interest, and claim of the state and county thereto," and is interpreted as extinguishing any existing county tax liens. Colo. Rev. Stat. § 39-11-136(1); *Moorehead*, 194 Colo. at 401. As such, preservation of lien priority, or even the lien itself, is not contemplated by § 39-11-136(1). Thus, unlike the cases above, Weld County's tax liens have been extinguished, and the Liens have first priority.

Finally, it is unclear whether the Government has moved for summary judgment as to its counterclaim, Plaintiff's quiet title claim, or both. (ECF No. 53.) Regardless, given the Court's findings, Plaintiff's quiet title claim against the Government necessarily fails because the Government holds a valid interest in the Property. Plaintiff's quiet title action will therefore proceed only as to the remaining Defendants, and summary judgment is granted as to the Government's counterclaim against Plaintiff.

## IV. CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

1) The Government's Motion for Summary Judgment (ECF No. 53) is GRANTED IN PART as detailed above;

2) The Government is entitled to foreclose on the Liens and receive first priority in the distribution of any future sale proceeds; and

3) The Court will determine, in conjunction with its ruling on Plaintiff's Motion for Default Judgment (ECF No. 52), whether a sale of the Property is appropriate under 26 U.S.C. § 7403(c).

Dated this 1st day of October, 2015.

BY THE COURT:

William J. Martínez
United States District Judge